Filed 12/18/14  In re Jaden V. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JADEN V. et al., Persons Coming Under the Juvenile Court Law. | B256507 (Los Angeles County Super. Ct. No. CK89367) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. R. P., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles Timothy R. Saito, Judge.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Tarkian & Associates, Arezoo Pichvai for Plaintiff and Respondent.

\* \* \* \* \* \*

R. P. (mother) challenges the trial court's denial of her petition to modify the order terminating reunification services with two of her children (Jaden and A.) on the basis of changed circumstances. The trial court did not abuse its discretion, and we accordingly affirm its judgment.

## FACTS AND PROCEDURAL BACKGROUND

In 2012, the juvenile court sustained the petition filed by the Los Angeles County Department of Children and Family Services (Department) with respect to Jordan, a son born to mother and Juan V. (father) in November 2010. In its ruling, the court found that mother and father had (1) a history of "engaging in violent physical altercations in the presence of" Jaden (and Jaden's half-brother), (2) a history of drug abuse, including being under the influence while the children were in their care, and (3) violated protective orders. The first finding rested on four prior instances of domestic violence between mother and father: (1) in June 2010, father threatened to stab then-pregnant mother and Jaden's half brother; (2) in January 2011, father punched mother approximately 15 times in the face, back and left arm; (3) in May 2011, father punched mother in the face and broke her sunglasses; and (4) in August 2011, father hit mother in the face (and bruised her lip) while violating a protective order. Some of these incidents occurred in front of one or more of mother's children. Following its ruling, the juvenile court provided mother with reunification services, and ordered her to participate in a domestic violence support program, in parenting classes, in counseling, and to comply with the protective orders against father.

Since then, mother has had two more children with father—A. (born February 2012) and E. (born April 2013). She has repeatedly violated the protective order to keep father away from her: Father went to the hospital for A.'s birth; came to counseling sessions with mother; and even attended mother's monitored visitations with the children over the monitor's objection. Mother has also asked that the protective orders be lifted. The juvenile court subsequently removed A. and E. from mother's custody.

In July 2013, the juvenile court terminated family reunification services for mother with respect to Jaden and A., and set the matter for a Welfare and Institutions Code[1] section 366.26 permanency planning hearing. Eight months later, mother filed a section 388 petition asking the juvenile court to reinstate reunification services on the basis of changed circumstances. Mother argued that she was doing everything she was supposed to do regarding the domestic violence, and put the blame on the Department and her relatives; she denied she was associating with father.

At the hearing on the motion, mother admitted to lying during her testimony at a prior hearing regarding her contact with father, but went on provide an explanation as to why father had gone to counseling sessions with her that was flatly contradicted by other witnesses at the hearing. Mother also denied having any contact with father, but the Department provided substantial evidence to the contrary.

The juvenile court was not persuaded that anything had changed, and noted that it had given mother "the benefit of the doubt" and was willing to overlook her earlier mistakes in judgment, including her prior false testimony to the court. But the court could not reconcile mother's continued denial of any contact with father with the evidence presented. The court viewed mother's testimony as indicating that she had not applied—and indeed, might not be able to apply—the principles she claimed to have learned from the domestic violence program. The juvenile court consequently found no changed circumstances, denied her section 388 petition, and terminated her parental rights as to Jaden and A.

Mother timely appealed.

## DISCUSSION

Section 388 empowers a juvenile court to modify its orders upon a showing, by a preponderance of the evidence, that there are changed circumstances or new evidence

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

that alter what is in the best interest of the child. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.) In assessing whether circumstances have changed, a court "may consider the entire factual and procedural history of the case." (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.) The court is to evaluate: (1) the seriousness of the problem leading to the dependency; (2) the degree to which the problem may be or has been resolved; and (3) the strength of the relative bonds between the child and both the parent and the caretaker. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532.) Where, as here, the reunification services have been terminated, the best interest of the child looks to the child's need for permanency and stability. (*In re Jacob P.* (2007) 157 Cal.App.4th 819, 828.) We review the juvenile court's evaluation of these considerations for an abuse of discretion. (*In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1445.)

Mother contends that the juvenile court abused its discretion for two reasons. First, she argues that the court misapplied the three factors enumerated above because she *has* resolved the domestic violence issues that led to the dependency and because her children's interest in permanency and stability favor placement with her. The juvenile court had an ample basis to reject these arguments. As described above, mother maintained an ongoing relationship with father despite court orders not to, and then repeatedly lied to cover up her contact with him. The juvenile court was within its discretion to conclude that mother's actions spoke louder than her words. These were the very issues that led to dependency and have yet to be resolved. Moreover, the juvenile court had grounds to find that leaving Jaden and A. with their caretakers furthered their permanency and stability more than placing them with mother in light of evidence indicating that (1) mother had previously been selective about when to show for her visits with Jaden and his half-brother, and (2) the children acted up on the days mother would visit and Jaden vehemently stated he wanted "no more visits" with mother.

Second, mother cites *In re Daisy H.* (2011) 192 Cal.App.4th 713 (*Daisy H.*) for the proposition that prior incidents of domestic violence cannot justify detaining a child—let alone termination of parental rights. *Daisy H.* is distinguishable. *Daisy H.*

4

held that a single domestic violence altercation several years prior to the Department's involvement was insufficient to justify detention when the children did not witness the altercation and the parents had since become legally separated. (*Daisy H.*, at p. 717.) In this case, the children bore witness to some or all of father's infliction of violence upon mother. More importantly, the volatile relationship between mother and father has never ended—despite ongoing protective orders and juvenile court proceedings regarding the potential loss of parental rights.

For these reasons, the juvenile court did not abuse its discretion in denying mother's petition for reconsideration. (Although mother also purported to appeal the court's order terminating parental rights, she did not brief the issue, so it is deemed abandoned.)

**DISPOSITION**

The judgment of the juvenile court is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.

HOFFSTADT

We concur:

_____, Acting P. J.

ASHMANN-GERST

_____, J.

CHAVEZ