Filed 4/28/22  In re Angelina V. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Angelina V., a Person Coming Under the Juvenile Court Law. | B311979 |
| _____ | Los Angeles County Super. Ct. No. 20CCJP05584A |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| CARLOS V., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Debra Archuleta, Judge.  Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

———————————

Father Carlos V. appeals jurisdictional findings and dispositional orders removing his teenage daughter from his custody and granting him monitored visits. We affirm. Statutory references are to the Welfare and Institutions Code.

## I

We summarize the factual and procedural background.

## A

Fifteen-year-old Angelina and her younger half sister were living with their mother and the half sister's father—Angelina's stepfather. In June 2020, Angelina told her mother the stepfather had touched her inappropriately several times between the ages of 10 and 14. The mother sent Angelina to live with her father. In October 2020, Angelina told her father about the abuse. He took Angelina to a police station to make a report.

On October 20, 2020, the Los Angeles County Department of Children and Family Services filed a section 300 petition on behalf of Angelina and her younger half sister alleging the stepfather sexually abused Angelina, the mother knew, and the mother did not allow Angelina to report. The juvenile court detained Angelina from the mother and released her to the father. Police arrested the stepfather, and the mother and daughters received a restraining order against him.

But by December 2020, the Department was concerned about the father's "unresolved propensity to commit violent criminal acts." The father's criminal record included convictions for disorderly conduct under the influence, spousal battery,

2

battery, and driving with a suspended license. His record contained other arrests.

Angelina's adult half sister Ruby told police, "It's just weird hearing that her dad cares about [the stepfather's abuse], when he was 10 times worse in my eyes." She said the father had hit the mother during their relationship and, in or around 2009, he raped the mother while Ruby and Angelina were in the room. Ruby was concerned with the father's history of violence and said she did not want Angelina staying with the father because of his drinking. In 2019, Angelina witnessed the father threaten to kill the paternal grandmother.

The father had a history of domestic violence against Angelina's mother and against the mother of another child. In 2014, the Department filed a petition on this child's behalf alleging the father slapped the child's mother while she held the child and, in another incident, stabbed and cut the mother with a knife. The father lost custody of the child after failing to comply with his case plan.

Despite this other case, the father reported to the Department he had no previous involvement with the juvenile court. He refused to submit to a live scan background check or to drug and alcohol testing.

In January 2021, the mother reported concerns about Angelina's safety in the father's care. Angelina had called her scared and crying, asked the mother to pick her up, and said the father was yelling at her, saying he did not trust the government and her school was brainwashing her. Later that month, a social worker reported Angelina seemed afraid to talk to her. Angelina moved close to the social worker and spoke softly, saying the

3

walls were thin and the father could overhear. Angelina told the social worker she wanted to live with the mother.

In February 2021, the Department tried to schedule an interview with Angelina, but the father said Angelina did not want to talk to the Department alone and that he and Angelina's attorney had to be present for the interview. Angelina, however, told a social worker she wanted to speak in private but the father would not let her. The father delayed scheduling appropriate therapy for Angelina after agreeing to participate. He and Angelina constantly argued, and he threatened to send her to foster care.

On February 22, 2021, Angelina again called her mother crying about the father, then abruptly ended the call, which the mother said meant the father was nearby. The mother asked the Department to remove Angelina from the father and place Angelina with her.

On February 24, 2021, a social worker spoke with Angelina on the phone. Angelina said it was "safe" to talk to social workers when she was away from the father, but she was not comfortable speaking to them around him. She said living with the father was "stressful" and "draining" and she was having a difficult time completing her schoolwork because of the constant arguing.

On February 25, 2021, the court ordered the father not to interfere with the Department's attempts to interview Angelina in private. On the next day, however, the father tried to video record the social worker who came to interview Angelina and refused to stop, causing her to end the visit early. The social worker "rushed out of the residence" as the father questioned her and followed her to her car. The social worker reported fearing for her safety.

4

On March 5, 2021, the juvenile court held a jurisdiction and disposition hearing. The Department argued the father's violent tendencies and refusal to cooperate placed Angelina at risk of serious harm. Counsel for the Department, for Angelina, and for the mother each requested the court return Angelina to the mother with visitation for the father.

The juvenile court sustained an amended petition. We grant the Department's motion to augment the record with this petition. The court found by clear and convincing evidence Angelina must be removed from her father's custody. It placed Angelina with the mother and ordered services and monitored visits for the father. The father appeals these March 5, 2021 findings and orders.

B

On September 2, 2021, during the pendency of this appeal, the court terminated jurisdiction, granted the mother physical and legal custody, and ordered monitored visits for the father. We grant the Department's request for judicial notice of the September 2, 2021 minute orders. The father did not appeal these orders, which have become final. (Cal. Rules of Court, rule 8.406; see *In re Rashad D.* (2021) 63 Cal.App.5th 156, 164–167; but see *In re S.G.* (2021) 71 Cal.App.5th 654, 664–668.)

The Department filed a motion to dismiss the appeal as moot in light of the termination. The father opposed the motion, asking us to exercise our discretion to review his appeal as the findings and orders may prejudice him in future dependency or family law proceedings.

Out of an abundance of caution, we deny the motion to dismiss and exercise our discretion to reach the merits in this case. (See *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716.)

5

## II

Substantial evidence supports the juvenile court's order removing Angelina from the father's custody.

The juvenile court found by clear and convincing evidence Angelina must be removed from her father's care. (See § 361, subd. (c)(1).) On appeal, the question before us is whether a reasonable fact finder could have found it highly probable the fact was true. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012.)

The father argues his lack of cooperation with the Department is insufficient evidence to support removal, citing *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 290 and *In re Ma.V.* (2021) 64 Cal.App.5th 11, 24. But neither case involved current, ongoing conflict in the home and a parent with a history of perpetrating serious violence.

Here, Angelina was calling her mother scared and in tears, and her schoolwork was suffering. The father previously lost custody of another child due to domestic violence and more recently intimidated and distressed Angelina, failed to secure appropriate counseling for her, disobeyed a court order, and frightened a social worker.

The father's controlling and disruptive behavior made it impossible for the court to ensure Angelina's safety and well-being in his custody. A reasonable fact finder could find, as this court did, it was very likely Angelina would continue to suffer harm while living with him. The father relies on *In re Ashly F.* (2014) 225 Cal.App.4th 803, 809–811, in which a court failed to state the factual basis for its removal order and ample evidence showed there were reasonable means to protect the children in the home. But this court explained why it ordered Angelina

6

removed, and evidence showed there were *not* reasonable means to protect her while she remained in the father's custody.  The removal order was proper.

III

In light of the father's controlling and disruptive conduct during the Department's investigation, the court was within its discretion to order the father's visits with Angelina be monitored. (See *In re D.P.* (2020) 44 Cal.App.5th 1058, 1070.)

**DISPOSITION**

The orders are affirmed.

WILEY, J.

We concur:

GRIMES, Acting P. J.

HARUTUNIAN, J.[*]

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.