Filed 11/9/23  In re Joel H. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JOEL H., a Person Coming Under the Juvenile Court Law. | B327983 (Los Angeles County Super. Ct. No. 20CCJP03202B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. I.M., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Charles Q. Clay, Judge.  Affirmed.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Senior Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

I.M. (mother) appeals the juvenile court's exertion of dependency jurisdiction over her 12-year-old son Joel H. as well as its orders that she submit to a psychological examination and drug and alcohol testing.  We conclude there was no error and affirm.

## FACTS AND PROCEDURAL BACKGROUND[1]

### I. The Family

Joel H. is the child of mother and Joel H. (father), who passed away in May 2021.  Mother and father separated before father's death, and mother began dating Daniel B. (boyfriend) in late 2019.  By January 2022, mother and Joel were living with boyfriend in boyfriend's residence.

---

[1]     Consistent with the applicable standard of review, we set forth the facts in the light most favorable to the rulings below. (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

2

## II.  Prior Dependency Case Based on Domestic Violence With Father

In August 2020, the juvenile court exerted dependency jurisdiction over Joel after sustaining allegations that (1) mother and father engaged in domestic violence in Joel's presence, including one incident of physical violence where mother beat father with a broomstick, father pushed mother, and Joel put himself between them; and (2) mother has a history of substance abuse, including using methamphetamine and amphetamines. The court ordered Joel removed from mother's custody, but returned him to her custody approximately one year later after she completed her case plan, which included substance abuse treatment, drug and alcohol testing, a domestic violence support group, and individual counseling.  The court terminated jurisdiction over Joel on January 18, 2022.

## III.  Domestic Violence With Boyfriend

Just months after the juvenile court terminated its jurisdiction over Joel, mother stopped taking the psychotropic medications prescribed by her primary physician for the PTSD he suggested she had.  Mother also stopped attending therapy for the PTSD and the "abandonment issues" she claimed to experience when her mother did not accompany her and her father when they immigrated to the United States decades ago. In place of her prescribed medication and therapy, mother decided to self-medicate by smoking pot.  She also resumed drinking alcohol.  Due to her cessation of taking her medications and therapy, mother started to "feel[] anxious and started being needier."  From late January 2022 to October 2022, mother and boyfriend had verbal fights, including a "verbal dispute" in

3

October 2022 where police responded to boyfriend's residence and found mother "very intoxicated and at times incomprehensible."

Things came to a head on November 1, 2022. That night, while watching a movie with Joel, mother and boyfriend drank alcohol and got into a verbal argument over boyfriend's loyalty to her. After boyfriend threw an object at mother and mother threatened to call the police, boyfriend tried to leave. Mother blocked his path, but boyfriend wove his way around her. Once out in the driveway, boyfriend punched mother in the stomach and pushed her away, causing her to fall backwards and hit her head on the bumper of a car. Joel was present for the entire altercation, and was able to tell the police what he saw. Mother also reported that "an incident like this" "might have happen[ed]" previously.

In subsequent interviews, mother recanted the statements she made to police on the night of November 1, contending instead that boyfriend never touched her and that her fall was accidental. Joel also recanted his statements to police, contending instead that he was not present and, paradoxically, that the entire event was an "accident" (because mother and boyfriend told him it was). Mother was also less than forthright: She denied the existence of the prior dependency case, denied using alcohol on November 1, and admitted to lying about these issues only after being confronted with contrary evidence.

## IV. Current Dependency Case

On December 28, 2022, the Los Angeles County Department of Children and Family Services (the Department) filed a petition again asking the juvenile court to exert dependency jurisdiction over Joel due to (1) mother's "history of engaging in violent altercations" with boyfriend, including the

4

November 1 altercation; (2) mother's "history of substance abuse" and her "current use[] of alcohol and marijuana"; and (3) mother's "mental and emotional problems[,] including a diagnosis of PTSD." As a result, the Department alleged, mother had "failed to protect" Joel and "endanger[ed his] physical health and safety," thereby placing him at "risk of serious physical harm" that justified the exertion of jurisdiction under Welfare and Institutions Code section 300, subdivision (b)(1).[2]

On March 2, 2023, the juvenile court held the jurisdictional and dispositional hearing. The court sustained all three jurisdictional allegations, left Joel in his mother's custody, and ordered the Department to provide mother with family maintenance services. Those services were comprised of (1) drug and alcohol services, including a 12-step program and random drug and alcohol testing; (2) mental health counseling, including a psychological evaluation and requiring mother to take all prescribed psychotropic medications; and (3) individual counseling to address case issues.

## V. Appeal

Mother filed this timely appeal.

### DISCUSSION

## I. Substantial Evidence

Mother argues that the juvenile court's jurisdictional findings are not supported by substantial evidence. (*I.J.*, *supra*, 56 Cal.4th at p. 773.)

Section 300, subdivision (b), authorizes the assertion of dependency jurisdiction where a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm

---

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

5

or illness, as a result of" (1) "[t]he failure or inability of the child's parent . . . to adequately supervise or protect the child"; or (2) "[t]he inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness . . . or substance abuse." (§ 300, subds. (b)(1)(A) & (b)(1)(D).) Exposing a child to domestic violence can constitute a failure to protect a child from the risk of serious physical injury under subdivision (b) of section 300 (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194 (*Heather A.*); *In re R.C.* (2012) 210 Cal.App.4th 930, 941), at least if, at the time of the jurisdictional hearing, the evidence supports a finding that the "violence is ongoing or likely to continue" rather than being a one-time incident unlikely to recur (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717, disapproved on other grounds by *In re D.P.* (2023) 14 Cal.5th 266, 278; *In re M.W.* (2015) 238 Cal.App.4th 1444, 1453-1454; cf. *In re J.N.* (2010) 181 Cal.App.4th 1010, 1025-1027). A parent's substance abuse or mental illness can also justify the exertion of dependency jurisdiction, at least if at the time of the jurisdictional hearing there is a defined risk of harm linked to that substance abuse or mental illness. (*In re David M.* (2005) 134 Cal.App.4th 822, 830.) Under any of these grounds, *risk* of harm means just that: The juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction." (*In re N.M.* (2011) 197 Cal.App.4th 159, 165; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383 (*Kadence P.*), superseded by statute on other grounds as stated in *In re A.M.* (2020) 47 Cal.App.5th 303, 322; *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993.) A parent's past conduct is a "good predictor" of her future conduct, and hence whether a child is at risk. (*In re T.V.* (2013) 217 Cal.App.4th 126, 133 (*T.V.*).)

Substantial evidence supports the juvenile court's jurisdictional findings in this case. Substantial evidence supports the court's finding that Joel is at substantial risk of serious physical harm by virtue of the domestic violence between mother and boyfriend. Joel was present when boyfriend punched and pushed mother on November 1, and Joel has shown a willingness to get in between mother and her assailants; Joel is therefore in harm's way. (Accord, *Heather A., supra,* 52 Cal.App.4th at p. 194 ["Obviously the children were put in a position of physical danger from [domestic violence occurring in their presence], since, for example, they could wander into the room where it was occurring and be accidentally hit"].) Substantial evidence supports the court's finding that mother's neglect of her mental illness by not taking her prescribed medications and ceasing her therapy, as well as her use of alcohol and marijuana, placed Joel at substantial risk of serious physical harm. Mother herself admitted that it was her neglect of her mental illness that led to her self-medication through alcohol and marijuana, which led to her feeling anxious and needy, and which thus prompted her to instigate the argument with boyfriend that escalated to physical violence in Joel's presence on November 1. What is more, substantial evidence supports the court's finding that Joel remained at risk at the time of the jurisdictional hearing because the ingredients that led to the November 1 incident that placed Joel in harm's way still remained: (1) Mother and boyfriend continued to be in a relationship; (2) mother had yet to address the mental health and substance abuse issues that precipitated verbal arguments that, on two occasions, escalated into physical violence between them; and (3) Joel continued to be in the household. Mother's subsequent

7

statements lying about past events and minimizing the November 1 incident show mother's willingness to conceal facts in order to keep custody of Joel, even when such custody exacerbates the risk to Joel. (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision"].)

Mother resists this conclusion with what boil down to two sets of arguments.

First, mother asserts that mental illness and substance abuse are, by themselves, insufficient to warrant the exercise of dependency jurisdiction. This is true (*In re L.W.* (2019) 32 Cal.App.5th 840, 849; *In re A.L.* (2017) 18 Cal.App.5th 1044, 1050), but also irrelevant. That is because the evidence here supported the juvenile court's implicit finding that mother's mental illness and substance abuse contributed to the domestic violence that put Joel at substantial risk of harm. (Cf. *In re L.C.* (2019) 38 Cal.App.5th 646, 652-654 [parent's methamphetamine use did not create risk of harm when parent left child in care of competent adult while using the drug]; *In re J.A.* (2020) 47 Cal.App.5th 1036, 1046-1047 [mother's use of edible marijuana gummies did not create risk of harm to fetus when no evidence established actual adverse effects on the fetus, and parent immediately stopped consuming gummies once informed of potential adverse effect].)

Second, mother asserts that any risk of harm to Joel no longer exists because her fight with boyfriend was an isolated incident and because mother went back on her prescribed medication, tried to resume therapy, and stopped drinking once the Department again became involved. We reject these

8

assertions. Accepting mother's assertion that the November 1 altercation was an isolated incident would require us to ignore mother's earlier statements in favor of her later, self-serving statements; this is inconsistent with the governing standard of review. And mother's recent and hasty resumption of medication and therapy does not negate all risk. Mother's past conduct in stopping her medication and therapy (and using marijuana and alcohol to self-medicate) after the prior dependency case closed supports a reasonable inference mother would do the same thing again if Joel were not subject to the court's jurisdiction in this case. (Accord, *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1653 [parent's refusal to take medication contributed to risk and indicated parent's "unwillingness to accept and acknowledge how her mental problems contributed to [the] situation"].) The juvenile court acted reasonably in concluding that Joel remained at risk until mother had established she would not engage in the same pattern of conduct again.

## II. Dispositional Order

Mother also challenges two of the juvenile court's dispositional orders—namely, (1) that mother submit to a psychological assessment, and (2) that mother submit to drug and alcohol testing. A juvenile court has wide discretion to impose "reasonable orders to the parents," and this standard is satisfied as long as the order is "appropriate and in the child's best interest" and is designed to "eliminate [the] conditions that led to the court's finding [of jurisdiction]." (§ 362; *In re A.L.* (2010) 188 Cal.App.4th 138, 145 [orders imposed as part of family maintenance services must also satisfy these standards]; see *In re Nolan W.* (2009) 45 Cal.4th 1217, 1229.) We review a juvenile court's decision regarding which orders to impose for an abuse of

discretion (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 186-187), and review any subsidiary factual findings supporting such orders for substantial evidence (*T.V.*, *supra*, 217 Cal.App.4th at p. 136).

The juvenile court did not abuse its discretion in ordering either challenged order in this case. The court did not abuse its discretion in ordering the psychological assessment because, as noted above, substantial evidence showed that mother's untreated mental illness was a contributing factor to the domestic violence that posed a risk to Joel. Although it is true (as mother argues on appeal) that mother's personal physician had diagnosed her with PTSD, mother nevertheless freely admitted no *psychologist* had examined her, and the court ordered the assessment "to ensure the reliability of [the non-psychologist physician's] diagnosis" and "to ensure that mother is pursuing the appropriate course of treatment in terms of medication and therapy." (Accord, *Laurie S. v. Superior Court* (1994) 26 Cal.App.4th 195, 199-203 ["psychological evaluation is an 'information-gathering tool'" that is "frequently used in dependency cases"].) This order was accordingly appropriate, in Joel's best interest, and aimed at trying to eliminate one of the conditions supporting the court's finding of jurisdiction. And even if we assume that mother properly preserved her objection to the drug and alcohol testing, the court also did not abuse its discretion in ordering that testing because substantial evidence showed that mother's self-medication using marijuana and alcohol was also a contributing factor to the domestic violence that posed a risk to Joel.

**DISPOSITION**

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.*

KWAN

---

\*      Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.